21-1285 United States v. Luton and Mr. Scabalavea. Yes, your honor. You may proceed. Thank you, your honor. Good afternoon. May it please the court. Mark Scabalavea on behalf of the appellant. I just want to start by saying when I say U.S. actors in this, I mean co-conspirators located in the United States, just to make it things it's not so wordy. There's no question that the scheme was to defraud money from S.O. using the fake lottery. Have her send it to U.S. actors across and allow addresses and allow U.S. actors to pick it up at her house. Have U.S. actors put it in a U.S. actors bank account and have a U.S. actor send it to Jamaica. I assert three errors. First error is that Mr. Luton should not have received a two or two level enhancement for a substantial part of the scheme outside the United States. The scheme was executed both in the United States and Jamaica, but the execution of the scheme in the United States far exceeded the execution of the scheme in Jamaica. Now Dobson located in Jamaica through cell phone calls to S.O. in the United States convinced S.O. she won a fake lottery and convinced her to send money to U.S. actors addresses and allow the actors to pick up at their house. That's it. Just phone calls and nothing else. All other answers. Wasn't Mr. Dobson pretty much the mastermind of this fraud? Absolutely. Yes, your honor. Well, isn't that enough to make it substantial that substantial part of this crime occurred in Jamaica? Your honor, I argue that it could be. It could be very. It could be a mastermind. It could be something very small compared to everything else. And it wouldn't be substantial. Well, it was more than just but it was more than just the phone calls to wasn't Mr. Dobson also directing your client and others to implement the fraud? Yes, your honor. But everybody else was doing a lot more than just that. They may have been listening to him, but all everything that was actually occurring was occurring in the United States, which was a lot of things which I will go through your honor. Would you agree, though, that the word substantial doesn't mean the majority of the activity? It just means substantial. Yes, your honor. It doesn't mean necessarily majority. But then again, we don't want to mean just a little bit, just something just one little thing happens in another country. Then you get this whole you get this whole enhancement. I want to point out to the court that all the things that happened were so much so much greater than what Dobson did that it doesn't apply. And that's what I'd like to go over with now, your honor. And that is all the other execution of the conspiracy was completely was completed completely by U.S. actors. That is receiving the money from Esso. This was numerous U.S. actors located throughout the United States. Many U.S. actors were involved here with numerous addresses. This is more substantial than just phone calls and directing. Second, picking up money from Esso's house. This was two separate trips, two thirds of the way across the United States. The first involved three actors and the second involved two actors, two road trips, two thirds of the way across the United States, involving at least four different U.S. actors is much more than just phone calls and directing. Well, didn't your client collect money and cash and proceeds were then sent to Jamaica? Yes, your honor. To get the co-conspirators cut of the action to to them? Yes, your honor. At least my client was at least one person that did receive money and send it to Jamaica. So it does take some effort to, in effect, come up with a scheme that transports cash and valuable items to a foreign foreign country. And then in addition to that, didn't your client, you know, take take the lead and establish the communication system that was used to so that Dodson could communicate with the United States actors as a part of the scheme? I know it was established that that Dodson did communicate with my client, but I don't know if he did communicate with others or not. I don't know if it was established with others, but I know as far as my client's point of view, he was contacting him, but it's unknown if it was other items that I think the district court was looking at in concluding that there was substantial action in another country. What what would you what would you say the like the fundamental error that the district court made in reaching her conclusion? As far as as far as the substantial scheme outside the United States, I think there was just so much going on in the United States compared to what was happening outside the United States. I think that's what the error was. It was just I guess everything. What's the legal standard? I mean, so you said so much. I mean, that's yes, your honor. I mean, that's that could be a legal term of art, but yes, you know, we're stuck with substantial legal standards. Not too clear. I mean, we have the we have the Shelby case and that that was that was when they found it was actually there. It was substantial, but that case was completely different because that was somebody that was living in Kansas. We got all basically still all the goods and all the products from Europe and Europe and what else was it Europe and Africa. And then all he did, all this person did in the United States was take packages that came from there, package them up and send them over to Nigeria. That's the only that happened in the United States. Everything else was happening in those other those other countries. That's the that's the one that I was able to that's the one case I was able to find in this circuit that addressed this. So what what is our what is our scope of review? Our scope of review for this, for as far as as far as facts looking at this, it's clear, but as far as legal applying the facts of the law, it's de novo. Well, aren't we aren't we wallowing in facts here? Yes, your honor. We are. We are in fact, I'm just comparing the facts of this case to other cases that we have because I've not been able to find. And so then we're looking at whether the district court clearly erred as regards its factual conclusions. As far as the factual conclusions, I do not I do not believe the district court clearly erred. I think that I do think the district court erred in the fact that it did not consider that how much of the activity that was going on in the United States compared to what happened out in Jamaica. I think it I think it got that balance wrong. And you'd call that legal error then at that point? Yes, your honor. And if I may continue, your honor, you may just point out the other the other two things traveling to different locations in the United States to pick up packages that has also more substantial phone calls and depositing money into a U.S. actor's bank account, creating a bank account and then using the account to deposit large amounts of cash and cashier checks is also more central than just telephone calls. That's my argument on that. I'm going to go ahead and move ahead to the minor rule adjustment, which is my second point of error. Could you pull your could you pull your mic up closer to you? You're cutting out. I get about every other one. Yes, your honor. Thank you. Thank you. Thank you, your honor. The defendant was entitled to a minus two level adjustment for minor rule. The following is the reasoning why the defendant was not entitled to this is the flawed reasoning as my argument as there's five factors for minor rule. Factor one, the degree defendant understood the scope and structures of the scheme. There's very little in the sentencing record that supports this factor. The district court starts out by saying when explaining this, the district court says the defendant admits that he knew the scope of the activity, but he denied that he knew the full extent and that he merely assisted in executing the plan. And then district court goes on to say, however, the evidence presented at trial indicates he did much more than just assist the plan. And here's the district court's reasoning for this. It says he retrieved packages. He retrieved the packages sent to him by the victim. So, well, that's just assisting a plan. That's not that's not understanding the scope and structure. He drove cross country from New York, Colorado to pick up large sums of cash. Once again, that's assisting a plan at Dobson's direction. He set up bank accounts, which money and checks could be deposited and from to and he could transfer money to Jamaica. Once again, that's assisting the plan at Dobson's direction. These are all just assisting the plan, but not the degree he understood it. The district court goes on to say it is clear that he understood exactly how the conspiracy worked and he was involved in it for almost a year. Again, here's the court's reasoning. Although Mr. Dobson may have been mastermind and smooth talker who lured the victim, lured in the victim, which is the which is a district court in a meeting that Dobson was the mastermind. Defendant's role was crucial and critical to the completion of the fraud. Well, that's true. It was. But in any conspiracy, somebody's role is crucial and critical. I mean, that goes for anything except for maybe if you have like a bank robbery, you have a lookout and the lookout never sees anything. But I mean, in any conspiracy, it seems like everything is critical. If we conclude that the court district court was correct in finding that meets any of those five factors, is that fatal to your argument? No, Your Honor. They're all just five and just balancing the five, basically. But my argument is when I go through the other ones, it's the only one that holds much water at all is the factor four, which is the nature and extent of the defendant's participation. All the other ones are pretty much devoid of any of that. Well, counsel, in weighing those factors and in looking at your client's role, do we compare him with Mr. Dobson or do we also compare him with the other accomplices? Well, the whole conspiracy, Your Honor. As far as looking at each one of these factors, I like to show how each one of these factors really, he doesn't meet any of them except for factor four. Well, no, I understand that. But you've got Mr. Dobson, who's the mastermind. You've got other co-conspirators. And in trying to figure out where Mr. Luthan fits in, he's not the mastermind. But on the other hand, is that the only comparator is with Mr. Dobson or do we look at his relative role compared to the other co-conspirators? Relative to the other, Your Honor, and there's other co-conspirators as well. For example, SP, who had a pretty major role in this whole thing as well. And if I may continue, Your Honor? You may. In factor two, a defendant participating in planning and organizing. There's no real support for this factor at all. The court noted that Luthan provided Dobson with names and addresses of his friends and associates so that Dobson could instruct SO to send packages to those locations. That's not planning an organization at all. It's Dobson telling him what to do. It's finding addresses. Go find the addresses. Well, but he did that. But he did that. He had to organize the contacts to find the people and set that up. Yes, Your Honor. He had to find the addresses at Dobson's direction. But Dobson didn't know who the people were or where they were or how they should be contacted. Not to my knowledge, Your Honor. And so the defendant set all that up, correct? Correct. The defendant found all those addresses. I don't know if there's anybody else found more addresses because we just don't know the whole scope of the conspiracy. But he did find the addresses. But my argument that is not really participating in planning. It's more following directions. Go find addresses. The district court also talks about voluminous text messages were exchanged between Dobson and Luthan addressing tracking numbers for retrieval of packages that were mailed by SO. Once again, that's not planning and organizing. It's Dobson coordinating where to go is decision-making authority. There is zero support on the sentencing record to support any decision-making authority on Luthan's part. The court states, in particular, Luthan identified safe locations for the packages from SO to be sent. This has nothing to do with decision-making authority. It's just identifying places where the packages are to be sent. Now with Factor 4, which is the one that has some extent to it because nature and extent of defendant's participation. I mean, obviously, he did participate. But the nature of his participation was that of a subordinate. And also, finally, the fifth factor, the degree the defendant stood to benefit. Luthan claimed that he did not benefit from the scheme at all. And in response to that, the district court said, the court does not buy that for a minute. And then said that he was paid picking up packages and receiving up to $5,000 for distances he had traveled. Well, that amount compared to $971,000 just doesn't really make any sense regarding any real benefit. And finally, just to explain my third point of error and explain the high-end sentence. I know that I assert procedural reasonableness because I assert that the district court did not explain the high-end sentence. The district court explained why the low-end sentence wasn't appropriate, but then said nothing about the high-end sentence. I know there's that issue about contemporaries, I mean, contemporaneously objecting. However, my response to that is is that looking at the record, if you look at the very end of the record, it states the district court talks about is a sentence. And then the district court says, is there any other business to be brought to my attention? And you can argue that that might be any other business besides sentencing. That concludes my argument. I think we understand your argument. You may be seated. Your time's expired. And let's hear from the government, Mr. Brenton. May it please the court, I am Kyle Brenton on behalf of the United States. Luton conspired with his partner in Jamaica to defraud an elderly widow out of her life savings of almost $1 million. And his within guidelines 108-month sentence was entirely reasonable and appropriate. Now, Luton raises three arguments in this court, two of which are reviewable only for clear error, and the third is waived. Now, as to the first issue, the applicability of the two B1.1B10B, the district court found this conspiracy begins, ends, and at all times throughout has significant events taking place in Jamaica. Now, the guideline here requires only that a substantial part of a fraudulent scheme was committed outside the United States. And the district court's conclusion, factual conclusion about the beginning, end, and all times throughout is reviewable only for clear error. And in fact, I believe I just heard Mr. Scabavea concede that there is no clear error as to the facts on this point. So I think at that point, the game is up on this argument. There's not a single case cited in either Mr. Luton's brief or the United States' brief where a court has held that this a set of facts that is not sufficient to be a substantial part. Can I just ask you to clarify one point? You talked about clear error applying to the facts, but does that also apply to the ultimate conclusion of substantial part? Is that a legal conclusion or is that a factual conclusion? Well, Your Honor, I believe as our brief notes, the review of any guidelines enhancement overall can be a mixed question of law and fact. The underlying evidentiary facts, and that would be what happened where here, are certainly reviewed for clear error. The application of the guidelines language and the interpretation of the meaning of the guidelines language, that certainly is a legal issue that would be reviewed to novo. However, I've read Mr. Luton's brief and I have not found anywhere in that brief an articulation of what substantial part means other than to say here are the facts here and that's not substantial. In fact, I think the only definition of substantial that we have found is cited in the government's brief from the Ninth Circuit's opinion in the Ogunbake case. And the Ninth Circuit quoted two dictionary definitions there, an important or material matter thing or part, or an essential part, point, or feature. And I mean, there's no dispute here. And you're relying on those definitions as well? Certainly, this court has not defined substantial part. That's the only definition we've found from any courts. I think those are apt definitions. You didn't pitch a different one. We did not pitch a different one, Your Honor. And I don't think there's any need for a different definition to hold that the facts here easily meet that standard. We know that Dobson was in Jamaica by Luton's own testimony. Dobson was in Jamaica and hadn't been to the United States since 2017. Dobson called the victim and sweet-talked her into sending her money. He talked to her sometimes 10 times a day, according to her testimony. He called her 87 times the week of Luton's arrest. Dobson told her what to send and where, and arranged for Luton to pick up those packages. Of course, he only knew where to tell her to send them because Luton gave him those addresses, and we'll discuss that as to the second argument. And then Luton arranged for money to be sent back to Jamaica. So all of those things easily support the district court's factual conclusion and show that Dobson's conduct in Jamaica was an essential part of this scheme. Without Dobson making those calls, there's no crime here. So there's really no question that that was an essential part. Counsel, I don't want to belabor the point, but you did just say factual conclusion. Doesn't that have to be that the factual conclusion was that a substantial part of the activity was outside the U.S.? That's correct, Your Honor. Absolutely, that was the district court's finding of fact, and that supports application of the guideline enhancement here. Now, as to the second argument about a minor role reduction under 3B1.2, again here, this is a clear error issue. I think the mountain is even higher for Mr. Luton here because the defendant bears the burden of proving a minor role in the district court, and this court has held that battles over a defendant's status within a conspiracy will almost always be won or lost in the district court. Now, this case is no exception. The district court found that Luton's activity here was, quote, crucial and critical to accomplishment of the ends of the conspiracy. Luton was the on-the-ground manager of everything that happened in the United States, and to speak to the five factors guiding application of this guideline, Luton understood the scope and structure of the crime, and the district court found that he was speaking to Dobson up to five times a day, understanding where these packages are coming from, where they're going, what they're doing. He certainly understood the scope and structure. He participated in the planning and organizing of the conspiracy. I think, as Judge Tymkiewicz pointed out, it was Luton who obtained the MagicJack phone account that allowed Dobson to call the victim in the first place. So, without Dobson making those phone calls, there's no crime, but without Luton obtaining that phone number, there was no way for Dobson to call her in a convincing manner. And we also know that Luton was the one arranging for the pickups and deposits of the money. So, he certainly participated in the planning and organizing. Luton had decision-making authority because we know that he was the one selecting the safe destinations for the packages of cash and merchandise. He was selecting them from among his friends and associates, and he was telling Dobson, have her send the money here. Then, the nature and extent of his participation, I think even Mr. Luton has conceded that there's ample evidence on this prong. But the government's evidence showed Mr. Luton, after giving Dobson those safe locations, Dobson sent Luton a tracking number. Luton tracked the package and then went to the destination at the time of delivery, picked up the package, made substantial cash deposits into nearby ATMs, and then arranged for that to be wired to Jamaica. And the government's evidence showed that happening not once, but 19 times. So, there's really no question that his participation was significant. And as to the last factor, the benefits, we know that Luton picked up 300 to 400 packages for Dobson over the course of the year. That's from his own testimony. He was accounted for in wires to Jamaica. So, all this led the district court. When Mr. Luton asserted he didn't benefit from this crime, the district court's response was the court doesn't buy that for a minute. So, all of those five factors. Counsel, did you just say $500 per package or 50? The district court observed in the sentencing transcript was up to $5,000 for a package, and Luton's testimony was that what he was paid varied based on how far he had to travel to get it. Now, obviously, when we talk about his personal participation, we can't leave that topic without noting that Luton traveled twice, two-thirds of the way across the country, as my opposing counsel pointed out, to visit the elderly victim in the dead of night and pick up anything but. That led him to be nowhere near substantially less culpable than the other participants. And then, as to the third point, I believe I heard my opposing counsel concede that his inadequate explanation claim is a procedural reasonableness claim. It was not objected to at sentencing. So, the best he could ever hope for here is plain error. He hasn't out this waiver. He did not file a reply brief. So, I think by any standard, that needs to be the end of the road for this argument. Unless the court has other questions, I'm happy to sit down. Okay. Hearing none, thank you, counsel. You are dismissed. Time's expired and the case shall be submitted.